1
2
3
4
5          UNITED STATES DISTRICT COURT
6          EASTERN DISTRICT OF WASHINGTON

7   LA TRISA ESPINO,
                                          NO:  1:16-CV-3055-RMP
8                        Plaintiff,
                                          ORDER DENYING PLAINTIFF'S
9        v.                               MOTION AND GRANTING
                                          DEFENDANT'S MOTION FOR
10  COMMISSIONER OF SOCIAL               SUMMARY JUDGMENT
    SECURITY,
11                       Defendant.

12

13      **BEFORE THE COURT** are cross-motions for summary judgment from

14  Plaintiff La Trisa Espino, ECF No. 13, and the Commissioner of Social Security (the

15  "Commissioner"), ECF No. 14.  Ms. Espino seeks review of the Commissioner's

16  final decision denying her claims for disability insurance benefits under Title II of

17  the Social Security Act (the "Act") and supplemental security income under Title

18  XVI of the Act.  The Court has reviewed the motions, Plaintiff's reply

19  memorandum, the administrative record, and is fully informed.  The motions were

20  heard without oral argument.  The Court concludes that substantial evidence

21  supports the Commissioner's decision, and therefore grants Defendant's motion for

ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 1

summary judgment, ECF No. 14, and denies Plaintiff's motion for summary

judgment, ECF No. 13.

## BACKGROUND

### A. Ms. Espino's Claim for Benefits and Procedural History

Ms. Espino applied for disability insurance benefits on December 13, 2011,

alleging that she had become disabled on February 27, 2009.  Plaintiff also

protectively sought supplemental security income, through an application filed the

same date.  Plaintiff listed the following as conditions that "limit [her] ability to

work": back injury; blood clots; high blood pressure; and depression.  ECF No. 9-6

at 268.[1]  Her application was denied initially on April 16, 2012, and at the

reconsideration level on April 3, 2013.  ECF No. 9-3 at 78.  Ms. Espino requested a

hearing before an administrative law judge ("ALJ").  ECF No. 9-4 at 184.  Social

Security ALJ Larry Kennedy held a hearing in Yakima, Washington, at which Ms.

Espino and a vocational expert testified, and Ms. Espino's attorney presented closing

argument.  In a decision issued on November 24, 2014, ALJ Larry Kennedy found

Plaintiff not disabled.  ECF No. 9-2 at 17, 35.  The ALJ's decision became the final

decision of the Commissioner when the Appeals Council denied Ms. Espino's

---

[1] The page numbers refer to the consecutively paginated numbers across the

Administrative Record filed in this matter at ECF No. 9.

ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 2

request for review on February 24, 2016.  ECF No. 9-2 at 1; *see also* 20 C.F.R. § 404.981, § 416.1481.

Plaintiff appealed the ALJ's decision to this Court on April 8, 2016, and received authorization to proceed *in forma pauperis*, without payment of the filing fee.  ECF Nos. 2 and 3.  Plaintiff moved for summary judgment on October 5, 2016, and the Commissioner filed a cross-motion for summary judgment on November 16, 2016.  ECF Nos. 13 and 14.

**B. September 23, 2014 Hearing**

Ms. Espino was represented by attorney Robert Tree at her hearing before the ALJ on September 23, 2014.  ECF No. 9-2 at 44; Tr. at 2.  Ms. Espino testified that she was 35 years old at the time of the hearing.  ECF No. 9-2 at 48; Tr. at 6.  She completed the eleventh grade.  ECF No. 9-2 at 44; Tr. at 6.  At the time of her hearing, Ms. Espino stated that she lived in a rented house in Yakima with her two children, her sister, and her sister's girlfriend.  ECF No. 9-2 at 51; Tr. at 8.  Her sister helped Ms. Espino care for her children.  ECF No. 9-2 at 58; Tr. at 16.

Plaintiff's most recent formal employment ended approximately five years before the hearing.  Ms. Espino worked in 2009 as a childcare assistant at a preschool.  ECF No. 9-2 at 51; Tr. at 9.  In 2008, she was self-employed in a similar line of work, providing childcare for three preschool-aged children out of her home.  ECF No. 9-2 at 51-52; Tr. at 9-10.  From approximately 2007 until 2008, Ms. Espino worked as a fruit sorter at a warehouse in Yakima.  ECF No. 9-2 at 52; Tr. at 10.

Ms. Espino also previously had worked at Liquidation Outlet stocking inventory and at a tavern as a bartender.  ECF No. 9-2 at 53; Tr. at 11.

From Ms. Espino's date of alleged onset in February 2009 until the date of the hearing, she lived in Yakima and Las Vegas, Nevada.  Ms. Espino recalled at the hearing that she moved to Las Vegas "for a couple of years" from approximately 2009 until she returned to the Yakima area at the end of 2010.  ECF No. 9-2 at 53-54; Tr. at 11-12.  Ms. Espino explained that she went to Las Vegas to avoid exposing her children to the drug abuse that she was struggling with at the time.  ECF No. 9-2 at 54; Tr. at 12.  Plaintiff recalled that she continued to use street drugs, specifically crack cocaine, throughout her time in Las Vegas and supported her usage by engaging in informal employment.  ECF No. 9-2 at 54-55; Tr. at 12-13.  Ms. Espino estimated that she spent approximately 50 to 100 dollars per day on drugs during the period in which she was in Las Vegas.  ECF No. 9-2 at 55-56, Tr. at 13-14.  Ms. Espino testified that since returning to Washington State in 2010, she had not "left the state at all, period."  ECF No. 9-2 at 56; Tr. at 14.

Ms. Espino testified that upon returning to Yakima, she had a filter inserted into an artery to address a blood clot she developed while in Nevada.  ECF No. 9-2 at 57; Tr. at 15.  She denied purchasing street drugs since her return but acknowledged that she had used marijuana as recently as approximately one week before the hearing.  ECF No. 9-2 at 57-58, 65; Tr. at 15-16, 23.

The ALJ asked Ms. Espino to describe her daily routine. ECF No. 9-2 at 58; Tr. at 16. Ms. Espino testified that she spent the majority of her day reclined in bed or on the couch at her home. ECF No. 9-2 at 58; Tr. at 16. She described being able to complete small, brief tasks around the house such as cooking or cleaning. ECF No. 9-2 at 58; Tr. at 16. When asked by the ALJ how long she had felt the need to remain at home most of the time, Ms. Espino responded that this had been her practice since returning to Yakima from Las Vegas. ECF No. 9-2 at 59; Tr. at 17. She testified that she rarely drove, representing that her last time driving a car was eight months before the hearing. ECF No. 9-2 at 60; Tr. at 18.

Ms. Espino testified that she had her second back surgery in 2013, followed by physical therapy, although she had ceased physical therapy and the accompanying home exercises by the time of the hearing. ECF No. 9-2 at 59-60; Tr. at 17-18. She described her mobility as getting worse after the surgery, with even more time spent lying down. ECF No. 9-2 at 60-61; Tr. at 18-19. She described experiencing an uncomfortable pulling sensation when she sat and difficulty standing for longer than fifteen minutes at a time before needing to rest for approximately one hour to one and one-half hours to relieve the pain. ECF No. 9-2 at 61-63; Tr. at 19-21.

In response to questioning from her attorney, Ms. Espino recalled that her treating physician in 2012 stopped prescribing her narcotic pain medications out of concerns regarding her drug abuse. ECF No. 9-2 at 64; Tr. at 22. When Ms.

Espino's attorney asked her to clarify when she last used crack cocaine, she testified that she used it in 2009. ECF No. 9-2 at 64; Tr. at 23.

The ALJ also examined Kimberly Mullinax, a vocational expert. ECF No. 9-2 at 65; Tr. at 23. First, the ALJ asked Ms. Mullinax to classify Ms. Espino's past work according to the Dictionary of Occupational Titles ("DOT"). ECF No. 9-2 at 66; Tr. at 24. Ms. Mullinax classified Ms. Espino's work as follows: for her work as a bartender, the DOT is 312.474-010, with an SVP[2] of three requiring only light strength, but, as performed, medium; for her work as a nursery school attendant, the DOT is 359.677-018, with an SVP of four and a need for light strength; for her work as an agricultural produce sorter, the DOT is 529.687-186, with an SVP of two, and strength is light; for her work as a child monitor, the DOT is 301.677-010, with an SVP of two and requiring medium strength; and for her work as a stock clerk, DOT is 299.367-014, with an SVP of four and a need for heavy strength. ECF No. 9-2 at 66; Tr. at 24.

---

[2] "SVP" refers to the level of "specific vocational preparation" required to learn a job. Jobs with an SVP of one to two are unskilled and require as little as a short demonstration or as much as one month to develop the requisite skills. Jobs with an SVP of three to four are semi-skilled and require between one month and six months to learn. Jobs with an SVP of five or higher are skilled. *See* Social Security Ruling 00-4p, 2000 SSR LEXIS 8.

The ALJ asked Ms. Mullinax to assume a hypothetical individual with the same age, education, and work experience as Ms. Espino. The ALJ described the hypothetical individual as demonstrating the following residual functional capacity: "could do light work as that's defined by the Regulations; could occasionally balance, stoop, kneel, and crouch; no ladders, ropes, or scaffolds; no ramps or stairs; no crawling . . . would avoid concentrated exposure to extreme cold, extreme heat, vibration, and hazards such as working at heights . . . would further be limited to simple, routine tasks . . . could follow short, simple instructions; could do work that needs little or no judgment; could perform simple duties that could be learned on the job in a short period." ECF No. 9-2 at 67-68 at 25-26. Ms. Mullinax testified that, of Ms. Espino's past work, the hypothetical person described could perform only the work of an agricultural produce sorter. However, Ms. Mullinax added that the hypothetical person with the same residual functional capacity as described could also work: as a "cashier II," DOT 211.462-010, requiring light strength; as a cleaner or housekeeper, DOT 323.687-014, requiring light strength; or as a fast food worker, DOT 311.472-010, also requiring light strength. ECF No. 9-2 at 68; Tr. at 26.

The ALJ next asked Ms. Mullinax if a second hypothetical individual, with the same environmental and postural limitations as described in the first scenario, but with the ability to perform only sedentary, rather than light, work could perform any occupations. ECF No. 9-2 at 68; Tr. at 26. Ms. Mullinax agreed with the ALJ that none of Ms. Espino's past work would be suitable for the second hypothetical

person. ECF No. 9-2 at 69; Tr. at 27. Ms. Mullinax offered as alternative occupations fitting the second hypothetical, with the sedentary restriction, the following: assembler, DOT 734.687-018; telephone information clerk, DOT 237.367-046; and document preparer, DOT 249.587-018. ECF No. 9-2 at 69; Tr. at 27.

Next, the ALJ asked Ms. Mullinax to consider suitable occupations for a third hypothetical residual function scenario in which the individual could perform light work but could not undertake any of the occasional postures outlined in the first hypothetical. ECF No. 9-2 at 69; Tr. at 27. Ms. Mullinax responded that the "cashier II" position from Ms. Espino's work history still would conform to the limitations set out in the third hypothetical. ECF No. 9-2 at 69; Tr. at 27. Finally, the ALJ asked Ms. Mullinax to consider a fourth hypothetical individual who could perform only sedentary work without engaging in any of the postures outlined in the first scenario. ECF No. 9-2 at 69; Tr. at 27. Ms. Mullinax responded that all of the sedentary occupations that she had previously outlined still would be appropriate in the fourth hypothetical because the postural restrictions of the fourth hypothetical were within or below the work level for those occupations. ECF No. 9-2 at 70; Tr. at 28.

The ALJ then asked Ms. Mullinax what occupations would be suitable for a hypothetical person who was limited to infrequent and superficial interactions with members of the public. ECF No. 9-2 at 70; Tr. at 28. Ms. Mullinax testified that,

out of Ms. Espino's past work, the cashier role would suit the superficial public interaction limitation that the ALJ set out, but required frequent contact. ECF No. 9-2 at 71; Tr. at 29. Ms. Mullinax continued that the produce sorter, cleaner/housekeeper, document preparer, and assembler positions all conform to the public contact limitation in full. ECF No. 9-2 at 71-72; Tr. at 29-30.

Ms. Espino's attorney asked Ms. Mullinax to give an opinion on how many days of work an individual may miss before being fired from their job and on the effect of a person needing to take breaks to lie down on her ability to retain her job. ECF No. 9-2 at 72; Tr. at 30. Ms. Mullinax opined that "employers will tolerate, on average, one missed day of work per month, and that persistent and ongoing issues of unplanned missed work or leaving work early would lead to termination of employment." ECF No. 9-2 at 72; Tr. at 30. Ms. Mullinax testified that employees generally receive two breaks during the workday, each ten to fifteen minutes in length, in addition to a lunch break between thirty minutes and one hour long; she further surmised that an employer would not tolerate additional breaks on a persistent, ongoing basis. ECF No. 9-2 at 72; Tr. at 30.

The hearing concluded with Ms. Espino's attorney, Mr. Tree, making a closing statement. ECF No. 9-2 at 73; Tr. at 31. He argued that Ms. Espino's second back surgery had failed and that the objective medical records, including imaging done after her surgery, showed severely herniated discs that would result in the

chronic low-back pain of which Ms. Espino complained, despite any other credibility issues raised by the record.  ECF No. 9-2 at 73-74; Tr. at 31-32.

### C. Medical Records

As for Ms. Espino's claim of debilitating depression and anxiety, the primary medical documents in the record consist of consultative examination report, prepared for DSHS by Dr. Thomas Genthe in April 2012.  ECF No. 9-8 at 613-18. Dr. Genthe concluded that Ms. Espino exhibited depression symptoms, but not to the degree that the symptoms or treatment for those symptoms should interfere with everyday work or related tasks.  ECF No. 9-7 at 617.

Regarding Ms. Espino's other claimed disabling ailments, the record as a whole reflects that Ms. Espino has a history of low-back pain, in addition to health problems related to pulmonary embolism and deep vein thrombosis, high blood pressure, Methicillin-resistant Staphylococcus aureus (MRSA), and obesity.  Ms. Espino underwent her first surgery to address lumbar spine degeneration, with bulging and herniation at L4-5, in 2009.  Although her condition initially improved following surgery, Plaintiff's lower back condition again deteriorated by the end of 2012.  In February 2013, Plaintiff again underwent back surgery to address spinal degeneration.  At odds in the record are assertions from Ms. Espino, and to some degree her medical providers, that her back condition has worsened since her second surgery and medical imaging conducted in late 2013 that indicate that Ms. Espino's spinal degeneration has at least stabilized.

Dr. Ankur Rana saw Ms. Espino for an appointment to initiate care in January 2012. Dr. Rana examined Ms. Espino and reviewed a spinal x-ray. ECF No. 9-8 at 624-35. He also completed a "Medical or Disability Condition" evaluation for the Washington State Department of Social and Health Services (DSHS) on Ms. Espino's behalf, declaring Ms. Espino unfit to work for twelve months because she was severely limited in her ability to stand, walk, or lift anything more than two pounds. ECF No. 9-8 at 633. However, in a follow-up visit in March 2012, Dr. Rana advised Ms. Espino not to restrict her daily activities and gave her a prescription to start physical therapy. ECF No. 9-7 at 621.

Dr. John Lyzanchuk began treating Plaintiff in 2013 and continued to see Plaintiff following her February 2013 back surgery and in monitoring Plaintiff's other health conditions. In May 2013, Dr. Lyzanchuk completed a "Medical or Disability Condition" evaluation for the DSHS. ECF No. 9-7 at 775. Dr. Lyzanchuk opined that Ms. Espino's pain and limited mobility prevented her from participating in any work or return-to-work activities. ECF No. 9-7 at 775. Dr. Lyzanchuk also concluded that Ms. Espino was severely limited in her ability to lift or carry anything over two pounds or to stand or walk. ECF No. 9-7 at 775. He anticipated that further evaluation would be necessary "pending final results of most recent surgery" and noted that Ms. Espino may require further medical assistance managing her pain. ECF No. 9-7 at 777.

The medical record is replete with further medical imaging, examination, and laboratory reports regarding Ms. Espino's conditions; most of the documents are addressed in the ALJ's decision.

**D. Other Evidence**

Among other non-medical evidence in the record is an investigation report that was prepared by the Cooperative Disability Investigations Program (CDIP) following receipt of an anonymous tip regarding Plaintiff in approximately June 2012, several months before Ms. Espino's second back surgery in February 2013. The investigation report was completed in November 2012 and concluded that Ms. Espino was able to function at a higher level than she acknowledged for purposes of her claims for Social Security and disability benefits. ECF No. 9-7. The report also referred to numerous inconsistencies related to Ms. Espino's symptoms, capabilities, and behaviors during the period from her alleged onset of disability and fall 2012. The report concluded that the witness statements, Ms. Espino's own statements to the investigator, and other information collected raised "serious questions of manipulation on [Plaintiff's] part for the purpose of drug seeking and secondary gain." ECF No. 9-7 at 4.

**E. ALJ's Decision**

The ALJ issued his decision on November 24, 2014. ECF No. 9-2 at 17. After finding that Ms. Espino had accrued sufficient quarters of coverage to remain insured through June 30, 2010, the ALJ evaluated Ms. Espino's claim of disability

commencing on February 27, 2009, according to the five-step sequential evaluation process. ECF No. 9-2 at 20.

At step one, the ALJ found that Ms. Espino engaged in substantial gainful activity between her alleged onset date and the date of the decision. ECF No. 9-2 at 21. The ALJ noted Ms. Espino's testimony that she was living in Las Vegas and using crack cocaine and her estimate that she spent between $50 and $100 on street drugs each day during that period. ECF No. 9-2 at 22. The ALJ extrapolated from the low end of Ms. Espino's estimated drug expenditure that she must have been earning at least $1,500 per month. ECF No. 9-2 at 22. The ALJ concluded that Ms. Espino's presumptive earnings exceeded the threshold for substantial gainful activity in both 2009 and 2010. ECF No. 9-2 at 22-23. However, the ALJ also recognized that a twelve-month period had elapsed since Plaintiff's substantial gainful activity in Las Vegas during which she was not engaging in any substantial gainful activity.

Proceeding to step two, the ALJ recounted his review of the objective medical evidence, including medical imaging, laboratory, and treatment and examination reports, and found that Plaintiff's "lumbar degenerative disc disease causes more than minimal functional limitation and is a severe impairment as defined by the Social Security Administration." ECF No. 9-2 at 23. The ALJ found that Plaintiff's other physical impairments "contribute to her functional difficulties." ECF No. 9-2 at 24. He determined that Plaintiff's deep vein thrombosis and pulmonary embolism also qualified as severe impairments for purposes of that Act. *Id.* In reviewing

Plaintiff's history related to these health conditions, the ALJ noted that when Plaintiff was hospitalized for insertion of her inferior vena cava (IVC) filter in May 2011, she had been found to have a one-and-one-half-year period of noncompliance with her medication for the conditions prior to her hospitalization, but that records from November 2012 indicated that Plaintiff had subsequently complied with the treatment protocols. ECF No. 9-2 at 24. The ALJ found that Plaintiff's hypertension, obesity, and history of MRSA all are additional severe physical impairments that contribute to her functional difficulties. ECF No. 9-2 at 24. With respect to Ms. Espino's self-reported depression and anxiety, the ALJ reviewed a psychological evaluation of Plaintiff from April 2012 and concluded that any mental health issues that Plaintiff has cause "no more than minimal functional limitations." ECF No. 9-2 at 25.

At step three, the ALJ determined that Plaintiff's impairments or combination of impairments did not meet or medically equal the criteria of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Therefore, the ALJ proceeded to step four and engaged in a two-step analysis for Plaintiff's impairments to determine the degree to which they: (1) were medically determinable and reasonably could be expected to cause the claimant's pain or other symptoms; and (2) limited claimant's functioning. ECF No. 9-2 at 27. The ALJ reasoned that Ms. Espino's medically determinable impairments could cause the symptoms of which Plaintiff complains; however, the ALJ concluded that

"claimant's statements concerning the intensity, persistence and limiting effects of these symptoms" were not fully credible. ECF No. 9-2 at 28.

The ALJ extensively recounted the evidence in the record upon which he relied in reaching his adverse credibility finding, including inconsistent statements by Ms. Espino to her medical providers as reflected in medical records, witness statements and conclusions of the investigator contained in the CDIP investigation report, and statements made by Ms. Espino at the hearing that contradicted other evidence in the record. The ALJ accorded the opinions of the health care providers consulted by Disability Determination Services, as well as psychological consultative examiner Dr. Genthe, considerable weight because they were supported by significant evidence in the record. ECF No. 9-2 at 31-32. The ALJ gave little weight to Dr. Rana's DSHS evaluation of Plaintiff because Dr. Rana did not have access to Plaintiff's medical records, and the evaluation was based on Plaintiff's reported symptoms. ECF No. 9-2 at 32. Likewise, the ALJ accorded little weight to the May 2013 evaluation for DSHS by Plaintiff's treating physician Dr. Lyzanchuk because the evaluation "took place during the claimant's recovery from her February 2013 back surgery, so it was not reflective of her maximum residual functional capacity." ECF No. 9-2 at 33. "Furthermore, the objective findings in the record do not support the conclusion that [Ms. Espino] is unable to lift two pounds or stand and walk." *Id.* Ultimately, the ALJ concluded that Plaintiff retained the residual capacity to perform light work with several limitations, including that Ms. Espino

cannot engage in postures such as climbing or crawling, must avoid exposure to extreme cold or heat, vibrations, and hazards, and can perform only work that requires little or no judgment and includes simple duties that can be learned quickly on the job. ECF No. 9-2 at 27. Specifically, the ALJ identified Ms. Espino's past work as an agricultural sorter as an occupation she would still be able to perform. ECF No. 9-2 at 33.

Although the ALJ concluded that Ms. Espino had retained residual functional capacity to perform some of her past work at step four, he found alternatively at step five that Ms. Espino could perform several light, unskilled jobs that are prevalent in the national economy, including cashier II, cleaner/housekeeper, fast food worker, assembler, telephone information clerk, and document preparer. ECF No. 9-2 at 34.

Therefore, the ALJ found that Ms. Espino is not disabled under the Act because she is capable of making a successful adjustment to a number of jobs requiring light and sedentary exertion levels and compatible with her additional limitations.

## APPLICABLE LEGAL STANDARDS

### A. Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing

42 U.S.C. § 405(g)).  "The [Commissioner's] determination that a claimant is not

disabled will be upheld if the findings of fact are supported by substantial evidence."

*Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).

Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d

1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.  *McCallister v.

Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989) (citing *Desrosiers v. Secretary of

Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988)).  Substantial

evidence "means such evidence as a reasonable mind might accept as adequate to

support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations

omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably

draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293

(9th Cir. 1965).  On review, the court considers the record as a whole, not just the

evidence supporting the decisions of the Commissioner.  *Weetman v. Sullivan*, 877

F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir.

1980)).

　　　　It is the role of the trier of fact, not this court, to resolve conflicts in evidence.

*Richardson*, 402 U.S. at 400.  If evidence supports more than one rational

interpretation, the court may not substitute its judgment for that of the

Commissioner.  *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th

Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be

set aside if the proper legal standards were not applied in weighing the evidence and

ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 17

making a decision. *Brawner v. Sec'y of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## B. Definition of Disability

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his or her impairments are of such severity that Plaintiff is not only unable to do his or her previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## C. Sequential Process

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 416.920. Step one

determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If the plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### D. Treating Physician Rule

The treating physician rule requires that an ALJ give the medical opinion of a claimant's treating physician controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence. 20 C.F.R. § 404.1527(c)(2). Although the Commissioner has eliminated the treating physician rule for claims filed on or after March 27, 2017, 82 Fed. Reg. 5852-53, the rule applies to Ms. Espino's claim filed in 2011.

The Commissioner may decline to give the claimant's treating physician controlling weight, only for "clear and convincing reasons" if the treating physician's opinion is not contradicted by another doctor, or for "specific and legitimate reasons" supported by substantial evidence in the record, where the treating physician's opinion is contradicted by another doctor. *Lester v. Chater*, 81 F.3d 821 821, 831 (9th Cir. 1995). In addition, "the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation and alteration omitted).

**E. Insured Status" Requirement**

To be eligible to receive disability insurance benefits, the claimant must demonstrate that she or he has "insured status" as defined by the Act. *See generally* 42 U.S.C. §§ 414, 423(a), (c); 20 C.F.R. §§ 404.101 et seq.; *Chapman v. Apfel*, 236 F.3d 480, 482 (9th Cir. 2000). A "[c]laimant is not entitled to disability benefits unless [she or] he can demonstrate that [her or] his disability existed prior to the expiration of [her] insured status." *Flaten v. Sec. of Health & Human Serv.*, 44 F.3d 1453, 1461, n. 4 (9th Cir. 1995). Deterioration of a claimant's condition after her insured status expires is "irrelevant." *Id.*

**DISCUSSION**

As a preliminary matter, the Court notes that Ms. Espino alleges, and revisits the allegation throughout her motion for summary judgment, that the ALJ erred in

ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21

primarily considering evidence from 2009 through 2012, prior to Ms. Espino's

second back surgery and during a period in which she abused street drugs, and by

providing "scant reasoning to reject Ms. Espino's condition subsequent to her

amended alleged onset date of April 17, 2012." ECF No. 13 at 18. Plaintiff further

alleged in her letter accompanying her request for review by the Appeals Council:

> [A]t the hearing with her attorney she amended her onset date to April 17, 2012 when she was done with that period in her life. Instead of acknowledging the amended onset date with the change in lifestyle the ALJ attacks credibility based on decision [sic] she made in the past and obstacles she has overcome. Thus, the credibility findings are erroneous.

ECF No. 9-6 at 329 (internal citation to ALJ's decision omitted).

Although the transcript reflects limited discussion between Ms. Espino's

attorney and the ALJ regarding whether Ms. Espino should have amended her onset

date, there is no indication that she actually amended the onset date at the hearing.

ECF No. 9-2 at 73-76; Tr. at 31-35. On appeal to this Court, Ms. Espino

acknowledges that she "did not make clear her onset date was definitely amended to

April 17, 2012 until after the ALJ issued his decision," ECF No. 13 at 18, but still

assigns error to the ALJ's credibility determinations and his alleged overreliance on

Plaintiff's circumstances and health status prior to April 2012.

Regardless of when or whether the amendment occurred, amendment of the

onset date is problematic for Ms. Espino in the context of the insured status

requirement. The ALJ found that Ms. Espino's earnings record made her eligible for

insurance through June 30, 2010, and the parties do not dispute his calculation. Therefore, Ms. Espino needed to establish disability on or before that date to be entitled to a period of disability insurance benefits. Ms. Espino's attempt to amend her onset date to April 17, 2012, whether or not it was effective, indicates that she acknowledged by the time her case was before the Appeals Council that she was not disabled as of the date that her insured status expired. That acknowledgement itself is fatal to Ms. Espino's claims for benefits. *See Flaten*, 44 F.3d at 1461.

Nevertheless, the Court also considers Ms. Espino's challenges to the ALJ's findings on the following grounds.

**A. Consideration of Medical Opinions**

Plaintiff assigns error to the ALJ's rejection of treating physicians Dr. Lyzanchuk's and Dr. Rana's opinions that Plaintiff was unable to work and has severely limited mobility and ability to carry anything more than two pounds.

The ALJ's analysis at step four of the sequential process reflects a careful, exhaustive review of the record and an articulation of specific reasons, based upon substantial evidence in the administrative record, to decline to accord significant weight to the opinions of Plaintiff's treating physicians. *See* ECF No. 9-2 at 27-33. The Court finds no basis to find that the ALJ erred in according the opinions of Ms. Espino's treating physicians controlling weight.

/ / /

/ / /

ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 23

## B. Credibility Determination

When the ALJ finds that a claimant's statements as to the severity of impairments, pain, and functional limitations are not credible, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's allegations. *Thomas*, 278 F.3d at 958-959; *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc).

If there is no affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's symptom testimony. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ engages in a two-step analysis in deciding whether to admit a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Under the first step, the ALJ must find the claimant has produced objective medical evidence of an underlying "impairment," and that the impairment, or combination of impairments, could reasonably be expected to cause "some degree of the symptom." *Lingenfelter*, 504 F.3d at 1036. If the ALJ determines that the objective medical evidence alone does not substantiate the claimant's statements about the intensity, persistence, or functionally limiting effects of her symptoms, the ALJ must assess the credibility of the claimant's statements based upon consideration of the entire record. 20 C.F.R. §§ 404.1527, 416.927; *see also* SSR 96-2p, 1996 SSR LEXIS 9, 61 Fed. Reg. 34489

(July 2, 1996); SSR 96-5p, 1996 SSR LEXIS 2, 61 Fed. Reg. 34471 (July 2, 1996); and SSR 06-3p, 2006 SSR LEXIS 5, 71 Fed. Reg. 45593 (Aug. 9, 2006).

Although a history of illegal drug use alone does not undermine a claimant's credibility, conflicting statements about past drug use has been found to support an adverse credibility determination. *See Thomas v. Barnhart*, 278 F.3d 947, 959-60 (9th Cir. 2002). In addition, "if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated . . . ." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (citation omitted).

The ALJ who determined Ms. Espino's claims appropriately performed his function as factfinder and identified information and inconsistencies throughout the record supporting his conclusion that Ms. Espino's subjective reports of her symptoms were not entirely credible. *See* ECF No. 9-2 at 27-33. Moreover, the ALJ set forth his reasoning with sufficient particularity to demonstrate that he considered the entire record and engaged in the inquiries required of him. *See id.* The Court, therefore, defers to the ALJ's credibility determination.

## CONCLUSION

There is substantial evidence supporting the ALJ's determination that Plaintiff was not disabled during the relevant period. Moreover, Plaintiff's assertion that she has amended her onset date to nearly two years after the date she was last insured renders her ineligible for the benefits she seeks.

ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 25

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

3. Judgment shall be entered for Defendant.

The District Court Clerk is directed to enter this Order, enter Judgment as outlined above, provide copies to counsel, and **close this case**.

**DATED** May 10, 2017.

_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge